VOTES FOR INELIGIBLE CANDIDATES.

THE house, on the 28th of January, having ordered;[2] " That the practice that has obtained with the senate and house of representatives, when convened together for filling certain offices, of rejecting from the count ballots cast for ineligible candidates, be referred to the committee on elections, with instructions to

[1] 65 J. H. 302, 395.          [2] Same, 134.

consider and report whether such practice is in accordance with the constitution and laws ;" the committee reported thereon as follows[1] :—

" The practice alluded to by the order seems to have been of long standing. It is believed, however, that no case has arisen where an election by the two branches has turned upon the rejection of such votes, and the committee are apprehensive that the objections to the practice, therefore, have not been duly considered. Recent elections by the convention have shown, that it is quite possible for the title of senators to their seats to depend upon the fact, whether the practice is sound or unsound. It not being competent for the two branches, when assembled for certain elections, to go into any discussions or investigations, the committee think it desirable to have such a rule previously established, as will obviate the necessity of such discussion or investigation. And the committee beg leave to submit, that no votes should be rejected from the count simply on account of the ineligibility of the candidates voted for. The constitution undoubtedly places these, without distinction, amongst those votes, a majority of which, that instrument makes necessary to a good election. And why should they not stand upon the same footing in the count ? It is a legal and proper mode of exercising the right of suffrage, if the voter choose it. It is a vote against all other candidates, eligible or ineligible. The difference between the two kinds of votes affects the candidates, not the voters. The ineligible candidate cannot avail himself of his election if he have a majority, the eligible candidate can. The constitution and laws, in the opinion of the committee, require that an election, to be good, should be sustained by more votes than are thrown for all other candidates. It is not necessary to go further and inquire into any disabilities of candidates. The house adheres to this principle, when acting as judge of the elections of its own members, and the committee believe that the principle is applied to all the elections in the state, except those by the convention of the two branches. This principle

[1] 65 J. H. 321.

63

is admitted and constantly acted upon in the congress of the United States, and an example may be found in the volume of 'Contested Elections in Congress,' *Washburn* v. *Ripley*, page 681. The principle was first admitted and confirmed, more than half a century since, under very memorable circumstances. In 1769, John Wilkes, Esquire, was expelled the British house of commons, and declared incapable of holding a seat therein. At a subsequent election, John Wilkes, notwithstanding his incapacity, received 1143 votes, and another candidate received 296. The commons declared Luttrell duly elected, and that the Wilkes votes were nullities, because of the incapacity or ineligibility of the candidate. This decision, recorded by parliament, convulsed the whole kingdom for twelve years, when the decision was expunged from the journals ' as being subversive of the rights of the whole body of electors of that kingdom.' The committee do not find that the principle has ever been questioned in England, since that settlement, nor do they find that it has ever been disregarded in this country, except in the instance of the two branches of our own legislature, when assembled together. But the committee think that the elections, which the two branches are required to make, are under the same authority as other elections held under the constitution, and they therefore ask leave to submit the following resolution.

Resolved, That it is not in accordance with the constitution and laws, for the two branches of the legislature, when determining elections, which they are required to make in convention, to reject from the count ballots cast for ineligible candidates."

Two of the members of the committee, (Messrs. *Russell* and *Thomas*,) dissenting from the report, presented the following reasons for their dissent[1]:—

" The fact, that the votes given for ineligible candidates, when the two houses have met in convention for the purpose of filling vacancies in certain offices, have been rejected from the count, is of long standing, and that no evil has resulted from such practise, is of itself a sufficient reason why a different rule

[1] 65 J. H. 403.

should not now be established. It is time enough to provide a remedy, when an evil is found to exist, and not in anticipation of an evil. This, it is believed, is a safe course in all cases.

But the question submitted to the committee is, whether, under the circumstances above alluded to, it is in accordance with the constitution and laws to reject votes cast for ineligible candidates. The constitution and laws of this commonwealth requiring that, in order to make an election, the candidate voted for should have a majority of all the votes or ballots given in; it becomes important to determine what is a vote or ballot? A *vote*, as defined by Johnson, is a 'a voice given and numbered;' a *ballot* is 'a little ball or ticket used in giving votes.'

Is a piece of paper bearing upon it the name of an imaginary being, (for it may as well be an imaginary being as an ineligible candidate,) deposited in the ballot-box at any election, to be counted merely because it has upon it characters in the shape of letters? Is such a piece of paper any more a vote because it has a name upon it?

The practise of rejecting blank pieces of paper, although they may have the form and shape of the actual votes which are cast, is believed to be uniform everywhere. The reason for the rejection of such a piece of paper is, that it is not 'a voice given and numbered;' that no one is designated who can be elected. It is, however, no less an expression of dissatisfaction to the candidates voted for by other persons on the one side or the other, than it would be if it bore the name of an imaginary being, or a person ineligible. In both cases it is not a vote, and should not so be treated.

So far as precedents can be found, the practise of rejecting from the count votes cast for ineligible candidates is not peculiar to the convention of the two houses in the Massachusetts legislature; it has obtained more or less in the house of representatives of the United States, and in the house of commons in Great Britain; though not always in either, or perhaps not even in a majority of cases. In short, the practise of counting or rejecting votes, cast under such circumstances, has not been

uniform, either in the United States or in Great Britain, so that nothing can be determined from precedent.

As a general principle, that all votes cast at any election by legal voters must be counted, the undersigned readily admit that very little, if any, discretion should be left to the presiding officer or officers at any election in this particular; but when a mistake, such as casting two votes, is palpable and perfectly obvious, the discretion of rejecting one may with propriety be exercised, and, in the opinion of the undersigned, should be exercised.

If it has become important, that any rule should be established concerning the counting or rejecting from the count votes cast for ineligible candidates, not only in the convention of the two houses for filling vacancies in certain offices, but in all elections in the commonwealth, the undersigned are of opinion, that the safest and best rule would be to reject from the count such votes, precisely in the same manner as blank pieces of paper are now in all cases rejected. For, if the elective franchise is worth possessing, it should be exercised with prudence, with discretion, and with judgment. It is too dear a privilege to be trifled with; it is too valuable to be made a subject of sport. Whenever, therefore, a voter shall be so lost to a sense of propriety and duty, as, through design or negligence, to cast his vote for ineligible candidates, he can have no reason to complain that his vote is not counted.

Inasmuch, therefore, as 'no case has arisen where an election by the two houses has turned upon the rejection of votes cast for ineligible candidates,' and the custom has obtained, for aught that appears, from time immemorial, to reject such votes, the undersigned take leave to submit, that the proposed resolution of the majority of the committee is uncalled for, and that no further action should be had on said order."

The report of the committee was ordered to lie on the table.